CREELMAN v. STAR CO.

(Supreme Court, Appellate Division, First Department. January 3, 1913.)

LIBEL AND SLANDER (§ 6*)—PURPOSE OF AN INNUENDO.

An article charging Charles F. Murphy and Mayor Gaynor with wrongfully retiring a deputy fire chief on full pay, under a plan to have him appointed state fire marshal, ending with, "The first step was the preparation of a long letter to the mayor by James Creelman," the plaintiff, "president of the Municipal Civil Service Commission," telling of such deputy fire chief's unfitness for further service and recommending his retirement at full pay, did not reflect upon plaintiff's act or motive in writing the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

letter, and was not libelous as to him, and cannot be made so by innuendo; the purpose of an innuendo being, where a publication is capable of two meanings, one innocent and the other libelous, that the libelous meaning was the one intended, and not to enlarge the publication.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 3–16; Dec. Dig. § 6.*]

Appeal from Special Term, New York County.

Action by James Creelman against the Star Company. From an order overruling a demurrer to the complaint, defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Clarence J. Shearn, of New York City, for appellant.
William Harman Black, of New York City, for respondent.

McLAUGHLIN, J.   The defendant published in its newspaper the following article:

### "Ahearn for Fire Marshal of State.

"Further indications of the alliance between Charles F. Murphy, boss of Tammany, and Mayor Gaynor, were disclosed yesterday in the semiofficial announcement that Murphy had obtained the promise of Governor Dix to appoint Thomas J. Ahearn to the position of State Fire Marshal at $7,000 a year. This position has just been created by the Legislature.

"Meanwhile, Mayor Gaynor had Ahearn, who has served for many years as deputy fire chief, retired at the full salary of his office, $4,200 a year. Under the law Fire Commissioner Johnson had authority to retire Ahearn at $2,100 a year.

"When Murphy decided to name Ahearn as State Fire Marshal, he set to work to have him retired at full pay. The Mayor readily agreed to his plan. The first step was the preparation of a long letter to the Mayor by James Creelman, President of the Municipal Civil Service Commission.

### "Creelman's Recommendation.

"In this letter Mr. Creelman pointed out that Ahearn entered the Fire Department in 1873, and in attempting to save a child early in his career had suffered injuries which affected his hearing. Creelman declared he was no longer fit to act as deputy chief and asked that he be retired at full pay. Gaynor indorsed the recommendation, and Commissioner Johnson retired Ahearn on Thursday."

Plaintiff, claiming that the publication, so far as he was concerned, was libelous, brought this action to recover the damages alleged to have been sustained. The complaint, after setting forth the article, and that it was published of and concerning the plaintiff, alleged as an innuedo that it charged Mayor Gaynor and Charles F. Murphy with having wrongfully and as a matter of favoritism agreed upon a plan to have Ahearn retired upon full pay from the position of deputy fire chief and have him appointed to the position of State Fire Marshal at a salary of $7,000 a year; that the plaintiff, as president of the Municipal Civil Service Commission, "entered with them into the said improper purpose, and in pursuance thereof, and in order to carry out the same, wrote the letter mentioned in the said publication." The defendant demurred to the complaint, upon the ground that the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

facts stated did not constitute a cause of action. The demurrer was overruled, and it appeals.

I am unable to see how the article, as published, can be said to reflect in any way upon the plaintiff's act or motives in writing the letter referred to. ·Where a publication is capable of two meanings, one innocent and the other libelous, then the complaint must show by innuendo that the libelous meaning was the one intended by the publisher. This is the purpose of an innuendo, and not to enlarge the publication. If an article is not susceptible of a libelous construction, it cannot be made so by innuendo. Morrison v. Smith, 177 N. Y. 366, 69 N. E. 725; Fleischmann v. Bennett, 87 N. Y. 231; Klaw v. N. Y. Press Co., Ltd., 137 App. Div. 686, 122 N. Y. Supp. 437; Maerlender v. Porter, 114 App. Div. 180, 99 N. Y. Supp. 533.

No one, it seems to me, reading the article, would be led to believe that the plaintiff had joined in an alliance with the mayor and Murphy to bring about the retirement of Ahearn. The article does not so state. There is nothing in it from which it can even be inferred that the plaintiff had any knowledge, at the time he wrote the letter referred to, of the plan or purpose of the mayor and Murphy, or that he, by writing the letter, was aiding them in any way. Nor is there anything in the article, as published, from which it can even be inferred that any of the statements contained in the letter written by the plaintiff were false, or that it was not written with the best of motives.

The plaintiff, as president of the Municipal Civil Service Commission, had no power to retire Ahearn nor could he do a single act which would bring about that result. Section 790 of the Greater New York Charter vested that power with the Fire Commissioner. The mere statement that the plaintiff had written the letter, without in any way impugning his motives, could not, as it seems to me, possibly be interpreted as defaming him, either in his official or unofficial capacity. For aught that appears from the article itself, the letter may have been written with the best of motives, and every fact therein stated been true.

The judgment appealed from, therefore, is reversed, with costs, and the demurrer sustained, with costs, with leave to plaintiff to serve an amended complaint, on payment of the costs in this court and in the court below. All concur.